NUMBER
13-02-076-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 

 



 

SNYDER COMMUNICATIONS,                                                Appellant,

 

                                                   v.

 

JOSEFINA MAGANA, ET AL.,                                                Appellees.

 



 

                        On appeal from the 92nd  District Court

                                  of Hidalgo
County, Texas.

 



 

 

                                   O P I N I O N

 

          Before Chief Justice Valdez
and Justices Yañez and Castillo

                                  Opinion by
Justice Castillo

 








This is an interlocutory appeal from the trial court=s order certifying a
class and adopting a trial plan.[1]  Appellees Josefina Magaña, Maria D. Escalon,
Elvira Lorena Quiroga, Maria Luz Figueroa, Maria Isabel Lopez, Donna M.
Rodriguez, and Nora Linda Dominguez sued their former employer, Snyder
Communications, L.P., appellant (ASnyder@), for breach of
contract and fraud.  Appellees charge
that Snyder failed to pay compensation due them pursuant to written,
contractual representations made by Snyder at the time of appellees= employment.  The compensation scheme provided that Snyder
sales associates would receive commissions for each valid ALetter of Authority@ they obtained from
residential consumers to transfer long distance carrier service to AT&T,
with whom Snyder had a contractual relationship, and bonuses based on
productivity. 








Snyder contends on appeal that the trial court erred when it certified
the class because: (1) the trial court failed to go beyond the pleadings in
assessing the commonality required for a properly certified class action and in
determining that common issues predominated over individual issues; (2) the
trial court erroneously concluded that common issues predominated over
individual issues and did not determine that a class action was a superior
method for fair and efficient resolution of the claims; (3) the named
plaintiffs will not fairly and adequately represent the interests of the class;
and (4) the trial plan adopted by the trial court is inadequate in that it
acknowledges that trial of the named plaintiffs= claims might not resolve the claims of the
remaining class, it neither accounts for the defenses raised by Snyder nor
includes a method of resolving Snyder=s defensive issues,
and it does not specify a formula or similar method for establishing proof of
liability and damages.  We affirm. 

                                           I.  PROCEDURAL HISTORY








Appellees originally filed suit individually against Snyder on June 6,
2000.  Snyder answered with a general
denial on June 29, 2000.  Appellees
amended to assert a class action on April 3, 2001, alleging that:  (1) the proposed class, consisting of persons
who were employed by Snyder in the capacity of sales associate on or after
April 3, 1997 and who had commissions denied in whole or in part, was so
numerous as to make joinder of all members impractical (Anumerosity@); (2) common
questions of law or fact affected the class, including a common course of
conduct by Snyder in fraudulently inducing appellees and unnamed class members
to enter into employment contracts and in making material and false
representations to each class member regarding commissions and bonuses (Acommonality@); (3) the claims of
the named plaintiffs were typical of the class in that all class members were
employed as sales associates on a commission basis and all were denied their
commission in whole or in part, so that the claims of the unnamed class members
arose from the same course of conduct and misrepresentations as the claims of
the named plaintiffs (Atypicality@); (4) the named
plaintiffs would fairly and adequately represent the interest of the class in
that they were members of the class, they had expressed interest in
representing the class, they had hired experienced litigation counsel who was
willing to advance the costs of notice to the class, and they had no interests
adverse to other members of the class (Aadequacy of
representation@); and (5) common
questions of law or fact in the claimed fraudulent inducement and
misrepresentations regarding commissions and bonuses predominated over any
questions affecting only individual members (Apredominance@), making a class
action the superior method of resolving the claims (Asuperiority@).  

Snyder filed an amended answer on April 6, 2001 and interposed eleven Aspecific denials@ denying each of the
facts alleged in the amended petition, including the class-action allegations;
three special exceptions; twenty affirmative defenses;[2]
and a general denial.  On April 9, 2001,
appellees filed their motion for certification, asserting that certification of
the class was appropriate on numerosity, commonality, typicality, adequacy of
representation, predominance, and superiority grounds.  They submitted a proposed trial plan that
same date.  








Snyder filed its opposition to class certification on April 18, 2001,
objecting on numerosity, commonality, typicality, adequacy of representation,
predominance, and superiority grounds. 
Snyder did not object to appellees= proposed trial plan,
nor did it submit its own proposed trial plan. 
It did file motions for summary judgment on April 17 and
April 18, 2001.  Also on April 18,
2001, appellees filed an amended certification motion.  At the certification hearing on April 19,
2001, appellees introduced deposition testimony and documents in support of its
motion.  Snyder introduced no
material.  The court entered the
challenged certification order and trial plan on January 3, 2002.  This interlocutory appeal ensued. 

                                       II.  CLASS ACTIONS IN TEXAS

                                       A.  The Nature of Class Actions

The class action serves as a mechanism to eliminate or reduce the
threat of repetitive litigation, prevent inconsistent resolution of similar
cases, and provide a means of redress for individual claims that are too small
to make independent actions economically viable.  Ford Motor Co. v. Sheldon, 22 S.W.3d
444, 452 (Tex. 2000).  The principal
purpose of the class-action device is efficiency and economy of
litigation.  See id. (discussing
the origins and general design of the class-action device).  When properly used, a class action saves the
court=s and the parties= resources by allowing
class-wide issues to be tried in an economical fashion.  See id. (citing Gen. Tel. Co. v.
Falcon, 457 U.S. 147, 155 (1982)).

Thus, class actions furnish an efficient means for numerous claimants
with a common complaint to obtain a remedy where it is not economically
feasible to obtain relief within the traditional framework of a multiplicity of
small individual suits for damages.  Gen.
Motors Corp. v. Bloyed, 916 S.W.2d 949, 952 (Tex. 1995) (citing Deposit
Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980)).  Class actions also facilitate the spreading
of litigation costs among numerous litigants with similar claims.  Bloyed, 916 S.W.2d at 953 (citing U.S.
Parole Comm'n v. Geraghty, 445 U.S. 388, 403 (1980)).  








However, the class-action format must not unduly restrict a party from
presenting viable claims or defenses without that party=s consent.  Southwestern Ref. Co., Inc. v. Bernal,
22 S.W.3d 425, 435-36 (Tex. 2000) (citing Tex.
R. Civ. P. 815 and Tex. Gov=t
Code Ann.
' 22.004(a))
(providing that state procedural rules may not abridge, enlarge, or modify the
substantive rights of a litigant). 
Accordingly, the class-action device may not alter the parties= burden of proof,
right to a jury trial, or substantive prerequisites to recovery.  Bernal, 22 S.W.3d at 437. 

A trial court=s decision to certify
a class can have Astaggering economic
consequences.@  Henry Schein, Inc. v. Stromboe, 46
Sup. Ct. J. 103, 2002 WL 31426407, at *19 (October 31, 2002) (O=Neill, J.,
dissenting).  Thus, even though it is an
efficient device, the right to litigate a claim as a class action is not
unfettered.  Rule 42 of the Texas
Rules of Civil Procedure provides that a trial court may certify a class action
only if the plaintiff satisfies the requirements of the rule.  Tex.
R. Civ. P. 42; Sheldon, 22 S.W.3d at 452‑53 (citing Weatherly
v. Deloitte & Touche, 905 S.W.2d 642, 647 (Tex. App.BHouston [14th Dist.]
1995, writ dism=d w.o.j., mandamus
denied, 951 S.W.2d 394 (Tex. 1997))). 


                           B.  The Statutory Requirements for Certification








A member of a class may sue or be sued as a representative party of
the class only if all of the following requirements of Texas Rule of Civil
Procedure 42(a) are satisfied:  (1) the
class is so numerous that joinder of all members is impracticable; (2) there
are questions of law or fact common to the class; (3) the claims or defenses of
the representative parties are typical of the claims or defenses of the class;
and (4) the representative parties will fairly and adequately protect the
interests of the class.  Tex. R. Civ. P. 42(a).  Additionally, at least one of the enumerated
requirements set forth in rule 42(b) must be met:  (1) adjudication of separate actions would
create a risk of inconsistent results or impairment of the interests of other
members not parties to the adjudication; (2) the defendant has acted or refused
to act on grounds applicable to the entire class; (3) the object of the action
is the adjudication of claims affecting specific property involved in the
action; or (4) common questions of law or fact predominate over any questions
affecting only individual members, and a class action is the superior method of
fairly and efficiently adjudicating the controversy.  Tex.
R. Civ. P. 42(b).   

Rule 42 is patterned after its federal counterpart.  Compare Fed. R. Civ. P. 23 with Tex. R. Civ. P. 42. 
Consequently, federal decisions and authorities interpreting current
federal class-action requirements are persuasive authority in applying rule
42.  Tex.
R. Civ. P. 42; Bernal, 22 S.W.3d at 433.  

                                     C.  The Class Certification Record








In making its class certification decision, a trial court may consider
the pleadings and other material in the record along with the evidence
presented at the hearing.  Employers
Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Comp. Self-Ins. Fund, 886
S.W.2d 470, 474 (Tex. App.BAustin 1994, writ dism=d w.o.j.). The
materials on which a trial court bases its certification ruling need not be in
the form of evidence that would be admissible at trial.  Texas Commerce Bank Nat=l Ass=n v. Wood, 994 S.W.2d 796, 801
(Tex. App.BCorpus Christi 1999,
pet. dism=d w.o.j.) (op. on reh=g).  A requirement that materials presented in the
context of a class certification hearing be in the form of admissible evidence
would call for the trial court to delve into the merits of the claims, which is
not appropriate when determining class certification.  Microsoft Corp. v. Manning, 914 S.W.2d
602, 615 (Tex. App.BTexarkana 1995, writ
dism=d); see State
Farm Mut. Auto. Ins. Co. v. Lopez,  46 Sup. Ct. J. 129, 2002 WL 31426668, at
*1 (October 31, 2002) (per curiam) (ALopez II@) (reaffirming that
Texas law Adoes not require a
trial court to evaluate the merits of the plaintiffs= claims.@).   

                    III.  THE EVOLVING STANDARD OF APPELLATE REVIEW 

                                         OF
CERTIFICATION ORDERS

 

Appellate review of class certification rulings historically has been
limited to determining whether the trial court abused its discretion.  Tana Oil & Gas Corp. v. Bates, 978
S.W.2d 735, 740 (Tex. App.BAustin 1998, no pet.);
Vinson v. Texas Commerce Bank-Houston, N.A., 880 S.W.2d 820, 823 (Tex.
App.BDallas 1994, no
writ).  However, the supreme court has
decried the practice of certifying class actions without conducting the proper
analysis into each requirement of rule 42, in particular the predominance
requirement of section (b)(4) of the rule. 
Bernal, 22 S.W.3d at 435.  Specifically, the Bernal court
rejected a Acertify now and worry
later@ approach and mandated
that trial courts perform a Arigorous analysis@ to determine whether
the prerequisites to certification have been met before certifying a class.  Id.
at 434-35. 








Snyder contends that the supreme court=s requirement in Bernal that a trial court
perform a Arigorous analysis@ strictly
circumscribes the deference with which appellate courts approach a trial court=s certification
order.  Id. at 435.  Snyder=s interpretation of
the supreme court=s exhortation that a
cautious approach to class certification is essential is that the supreme court
Avirtually established
a presumption against class certification@ and, therefore,
appellate courts no longer may view the evidence in the light most favorable to
the trial court=s certification
findings or indulge every presumption in favor of the court=s ruling.  

By advocating abandonment of the long-standing deferential review of a
trial court=s decision as to class
certification and suggesting that there is now a Apresumption against class certification,@ Snyder effectively
asserts that Bernal modified the appellate standard of review in the
class-action context to the point of eliminating a deferential abuse-of-discretion
standard.  In considering these
propositions, we are mindful of the use of the term Arigorous analysis@ in federal
jurisprudence from which Bernal adopted the phrase, the flexibility
conferred on the trial court by rule 42(c) to respond to developments in the
litigation, the entirety of the supreme court=s discussion in Bernal, and the supreme
court=s recent
pronouncements in Schein, 2002 WL 31426407, at *10‑11.[3]    








We first note that the United States Supreme Court has long required
federal district courts to conduct a Arigorous analysis@ into whether the
prerequisites of rule 23 are met before certifying a class.  Fed.
R. Civ. P. 23; Falcon, 457 U.S. at 161.  Nonetheless, a federal district court
exercises broad discretion in deciding whether to certify a class.  See Cross v. Nat=l Trust Life Ins. Co., 553 F.2d 1026, 1029
(6th Cir. 1977) (AA district court has
broad discretion in determining whether a particular case may proceed as a class
action so long as it applies the criteria of rule 23 correctly.@).  In federal class-action cases applying rule
23, the term Arigorous analysis@ does not mean that a
reviewing court must apply a less deferential standard of review than abuse of
discretion, but rather that the trial court must exercise its discretion within
the framework of the rule.  Fed. R. Civ. P. 23; Gulf Oil Co. v.
Bernard, 452 U.S. 89, 100 (1981).  We
do not read Bernal >s use of the term Arigorous analysis@ any differently.  








Further, while acknowledging the concerns created by the class-action
landscape before Bernal, we also must recognize the rationale behind the
inherent flexibility of rule 42 and the traditional application of the
abuse-of-discretion standard to class certification cases.  Nat=l Western Life Ins. Co. v. Rowe, 86 S.W.3d 285,
293-94 (Tex. App.BAustin 2002, pet.
filed).  The trial court in a class
action remains charged with the duty of actively policing the proceedings and
guarding the class interests.  Tex. R. Civ. P. 42(c); see
Bloyed, 916 S.W.2d at 954 (discussing the extraordinary nature of class-action
litigation, the protections required for absent class members, and the trial
court=s departure from the
detached role ordinarily assumed in other proceedings).  Accordingly, the terms of rule 42 itself
afford the trial court considerable authority and discretion in defining the
class, determining whether to grant or deny class certification, and in
decertifying or modifying the class if necessary as the case develops.  Intratex Gas Co. v. Beeson, 22 S.W.3d 396,
408 (Tex. 2000).[4]  Likewise, the abuse-of-discretion standard
accords to the trial court the deference appropriate to its unique and
particular responsibilities in class certification actions.  See Bloyed, 916 S.W.2d at 954.








We do not read Bernal as modifying the abuse-of-discretion
standard of review applicable to our analysis of class certification
orders.  Bernal did not suggest
that reviewing courts should accord a lesser degree of deference to a trial
court=s class certification
decision than to a decision subject to abuse-of-discretion review in any other
context.  Nor do we read Bernal >s admonition of the
need for a Acautious approach@ as establishing a de
facto presumption against certification, but rather simply as recognition
of the fact that the trial court must remain mindful of the necessity of
conforming with the requirements of rule 42 in determining class certification
questions.  Bernal, 22 S.W.3d 435.
 In fact, Bernal  reaffirmed that trial courts continue to
enjoy discretion in making class certification decisions.  Id. at 439 (AWe hold that the trial
court=s certification order
was an abuse of discretion because common issues do not predominate.@).  Thus, we conclude that a trial court retains
after Bernal both the duty and the broad discretion to exercise control
over a class action and to enter appropriate orders governing the conduct of
counsel and parties; however, this discretion is not unlimited but, rather, is
curbed by the constraints created by rule 42. 
Tex. R. Civ. P. 42; see
Gulf Oil, 452 U.S. at 100 (interpreting limitations on the exercise of
discretion by rule 23).








The Afavorable light@ analytical construct,
under which we view the materials presented at a certification hearing in the light
most favorable to the trial court=s certification order
and entertain every presumption that favors the court=s conclusions, has
been applied in abuse-of-discretion reviews of class certification cases since
at least 1983.  Parks v. U.S. Home
Corp., 652 S.W.2d 479, 485 (Tex. App.BHouston [1st Dist.]
1983, writ dism=d w.o.j.).[5]
 The supreme court impliedly
criticized this Afavorable light@ construct when it
rejected in Bernal a Acertify now and worry
later@ approach but did not
explicitly mandate its abandonment.  Bernal,
22 S.W.3d at 435.  After submission of
this case on interlocutory appeal, the supreme court expressly rejected the use
of the Afavorable light@ construct in class
certification reviews.  Schein,  2002 WL 31426407, at *10-11.  The Schein court held that the Afavorable light@ construct, both as
stated and as applied by the court of appeals below in its standard of review,
conflicted with Bernal and invoked the supreme court=s jurisdiction to
review the court of appeals= decision on Schein=s interlocutory
appeal.  Id. at *11. The
Schein court acknowledged that in Bernal it had Aexpressly stated that
the trial court=s decision to certify
a class was to be reviewed for an abuse of discretion.@  Id. 
It confirmed that A[a] trial court has
discretion to rule on class certification issues.@  Id.  However, the Schein court went on to
hold that only Asome of [the trial
court=s] determinations B like those based on
its assessment of the credibility of witnesses@ must be Agiven the benefit of
the doubt@[6] and noted that the Atrial court=s exercise of
discretion cannot be supported by every presumption that can be made in its
favor.@  Id.[7]  








Accordingly, we no longer may employ the Afavorable light@ construct in our
review of a trial court=s exercise of
discretion in making class certification decisions.[8]  Further, we must give Athe benefit of the
doubt@ to some decisions of
the trial court.  The supreme court did
not illuminate the corners of the Abenefit of the doubt@ standard or its
application outside the context of a trial court=s assessment of witness credibility.[9]  In view of the supreme court=s professed embrace of
the abuse-of-discretion standard in class certification cases, we will continue
to review certification orders for abuse of discretion while utilizing
well-recognized analytical constructs other than the Afavorable light@ construct.  








Thus, we will not substitute our judgment for that of the trial court.  Tana Oil, 978 S.W.2d at 740.  We will not find an abuse of discretion
simply because a trial court determines an issue differently than we would.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 242 (Tex. 1985); Vinson, 880 S.W.2d at 823.  We will find that a trial court abuses its
discretion only if its decision is arbitrary, unreasonable, or without
reference to any guiding principles.  State
Farm Mut. Auto. Ins. Co. v. Lopez, 45 S.W.3d 182, 186 (Tex. App.BCorpus Christi 2001,
pet. dism=d w.o.j.); Tana
Oil, 978 S.W.2d at 741.  We will find
that a trial court does not abuse its discretion if it bases its decision on
conflicting evidence.  Tana Oil, 978
S.W.2d at 741; Vinson, 880 S.W.2d at 823.  We will find that a trial court does
abuse its discretion when its ruling is based on factual assertions not
supported by material in the record.  Lopez,
45 S.W.3d at 186; Wood, 994 S.W.2d at 801.  Finally, we will continue to defer to the
trial court=s factual
determinations, so long as they are properly supported by the record, while
reviewing its legal determinations de novo.  Lopez, 45 S.W.3d at 186. 

                    IV.  SNYDER=S CHALLENGES TO CLASS CERTIFICATION








The trial court here found that appellees met their burden of
demonstrating that this class action satisfies the requirements of rule 42(a)
and 42(b)(4). Tex. R. Civ. P. 42(a); Tex. R. Civ. P. 42(b)(4).  The application of rule 42's requirements to
materials presented by both proponents and opponents of class certification has
resulted in the development of particularized definitions of the numerosity,
commonality, typicality, adequacy of representation, predominance, and
superiority requirements of the rule.  Tex. R. Civ. P. 42(a); Tex. R. Civ. P. 42(b)(4).  Snyder does not challenge on appeal the trial
court=s findings on
numerosity and typicality.  We thus
address in this section only Snyder=s complaints with
regard to: (1) an asserted error of law in the trial court=s refusal to go beyond
the pleadings in assessing the commonality and predominance issues; (2) the
trial court=s findings on
commonality under rule 42(a) as that issue is subsumed in the predominance
analysis required by rule 42(b)(4) and the trial court=s failure to determine
the superiority of the class-action mechanism; and (3) the trial court=s findings on adequacy
of representation under rule 42(a).

                           A.  The Materials Considered by the Trial Court

As a preliminary matter in its first issue, Snyder questions what
evidence the trial court considered in making its class certification
decision.  Specifically, Snyder contends
on appeal that the trial court should have considered Snyder=s summary judgment
materials, filed one and two days before the certification hearing, in ruling
on the motion for class certification. 
During the certification hearing, Snyder=s counsel mentioned evidence that Snyder asserted
was contained in the summary judgment materials.  However, counsel also stated:

The first thing the
Court needs to determine is whether or not there=s any cause of action here.  In that regard B and it=s not for today B but I=ll represent to the
Court that we have filed Motions for Summary Judgment as to each and every
claim.  That=s the first issue.

 

The court asked:

 

They
have been filed?

 

Snyder=s counsel responded:

 

They have been filed,
Judge, yesterday, the day before, very recently.  We just got the transcripts back from the
deposition of the Plaintiffs, and as quickly as they sent to us, we can draft
these documents and get them to the Court. 


 








So the Court
understands, there are seven plaintiffs. 
Four of them have no documents. 
This is a document case that they need to prove without evidence.  Snyder Communications, on the other hand, has
produced documents for each and every one of those individuals and accounted
for their LOAs submitted.  Three of the
plaintiffs do have documents, and in similar fashion Snyder Communications has
accounted for the documents that have been submitted through the process.  So in a document case, the Plaintiffs have none.  

 

You=ll also hear in the
Motion for Summary Judgment B and it really goes to
this because we need to know whether there=s a representative
claim.  You=ll hear each and every plaintiff without
exception saying, AI destroyed documents,
I threw them away, I don=t know what I did with
them,@ and this is after
they knew a lawsuit existed.  So we have
a spoliation issue.  It kind of sits to
the side, but it goes to the merits of the case.  

 








In addition to not requesting expressly at the certification hearing
that the trial court consider the summary judgment materials in ruling on
certification,  Snyder also did not
attach the summary judgment evidence to its written opposition to appellees= certification motion
objecting to class certification, even though Snyder filed the certification
response with the court at the same time it filed the summary judgment
materials.  Instead, Snyder affirmatively
informed the court that the material submitted with the summary judgment motion
was Anot for today@ and that the court
would Ahear in the Motion for
Summary Judgment@ that the Arepresentative claim@ and document
destruction issue Akind of sits to the
side@ and Agoes to the merits of
the case.@  Snyder now argues on appeal that appellees
did not dispute at the certification hearing the defensive issues allegedly
established by Snyder=s summary judgment
materials, and thus the trial court erred in certifying the class without
taking the materials into account.@[10]  

          Certainly,
a trial court can consider the pleadings and other material in the record,
along with the evidence presented at the certification hearing, in making its
class-action determination.  Employers
Cas. Co., 886 S.W.2d at 474.  Also,
we agree with Snyder that the materials on which a trial court bases its
certification ruling need not be in the form of evidence that is admissible at
trial.  Wood, 994 S.W.2d at 801; Rio
Grande Valley Gas Co. v. City of Pharr, 962 S.W.2d 631, 640 (Tex. App.BCorpus Christi 1997,
pet. dism=d w.o.j.); Manning,
914 S.W.2d at 615.  However, the
court may not consider factual assertions unsupported by the record.  Methodist Hosp. v. Tall, 972 S.W.2d
894, 899 (Tex. App.BCorpus Christi 1998,
no pet.).  Nor may the court consider
factual assertions that are purely speculative or that are not common
knowledge.  Id.    








Snyder cites to Bernal >s mandate that A[t]o make a proper
analysis, >[g]oing beyond the
pleadings is necessary, as a court must understand the claims, defenses,
relevant facts, and applicable substantive law in order to make a meaningful
determination of the certification issues.=@  Bernal, 22 S.W.3d at 435 (quoting Castano
v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).  Therefore, Snyder argues, the trial court
here was required to consider Snyder=s freshly filed
summary judgment materials.  We
disagree.  We are persuaded that the Arigorous analysis@ prescribed by Bernal
contemplates development of a record from which a reviewing court can readily
ascertain the materials the trial court considered in exercising its
discretion.  We are persuaded further
that the supreme court=s instruction in Schein
that we no longer review materials presented to the trial court in a light most
favorable to the court=s certification
decision makes it imperative that the record before us be free of ambiguity
about what the trial court considered in making its decision.[11]

We see no reason to exempt proponents and opponents of class
certifications from preservation-of-error and waiver principles applicable to
other litigants.  See Daughety
v. Nat=l Assoc. of
Homebuilders of the U. S., 970 S.W.2d 178, 181-82 (Tex. App.BDallas 1998, no pet.)
(affirming the trial court=s denial of class
certification because the plaintiffs had not presented the trial court with an
opportunity to rule on the single‑claim class argued on appeal).  In the words of the Dallas Court of Appeals:








Our role as an
appellate court is to determine the correctness of the lower court=s judgment.  That role is not altered by the fact that we
are reviewing a decision on whether to certify a class action.  Appellate rules reflect a policy that this
Court decide a case in the same posture that was presented to the trial
court.  In keeping with that policy,
issues to be reviewed by an appellate court must have been actually presented
to and considered by the trial court. 
It is axiomatic that justice is Abest served by
affording the trial court the first opportunity for review and decisions.@  Addressing matters not specifically presented
to the trial court usurps the trial court=s authority to
evaluate and rule on issues before it and denies the appellate court the
benefit of the trial court=s decision.  

 

Id.
(citations
omitted).  It is incumbent on proponents
and opponents of class certification alike to ensure not only that factual
assertions on which they rely are supported by materials in the record, but
also that the record reflects that they expressly asked the trial court to
consider the material.  See Methodist
Hosp., 972 S.W.2d at 899.  We cannot
meaningfully evaluate the trial court=s exercise of
discretion without an unambiguous record of what facts informed that
discretion.  








We are persuaded by the approach taken by federal courts in reviewing,
under an abuse-of-discretion standard, the Arigorous analysis@ performed by district judges in determining
certification matters: a party seeking consideration of materials in the
certification determination must request their consideration and ensure
inclusion of the materials in the appellate record.  See Ezelle v. Mobile Housing Bd., 709
F.2d 1376, 1380 (11th Cir. 1983) (holding that the trial court could not
consider evidence submitted in support of motions for partial summary judgment
and for certification in ruling on a decertification motion because the
evidence was Anever introduced as
evidence at the decertification hearing.@); see also Jones
v. Diamond, 519 F.2d 1090, 1098 (5th Cir.1975) (footnote omitted) (APlaintiff relies
heavily on the answers to his first set of interrogatories to defendant Diamond
to flesh out the Rule 23 skeleton. 
Unhappily, for reasons best known to himself, he did not formally
introduce these interrogatories into evidence when the court announced it would
decide the class certification question. 
The trial judge, therefore, was not legally compelled to consider the
facts revealed through this discovery.@).  In the absence of any indication in the
record that Snyder asked the trial court to consider the summary judgment
materials in making its certification determination or that the trial court
actually considered the materials, we find that the trial court was not
required to consider the summary judgment materials. 

          Snyder
also asserts on appeal that Bernal means that the trial court committed
an error of law in its recitations in the certification order that:

[A] trial court may, but is not required to, look beyond the
pleadings.  Intratex Gas Co. v. Beeson,
22 S.W.3d 398, 404 (Tex. 2000). 
Certification may be based on the pleadings alone.  In re Alford Chevrolet-Geo, 997 S.W.2d
173, 181 (Tex. 1999). 

We
disagree.  Bernal >s instruction to go Abeyond the pleadings@ in formulating a
trial plan did not transform to Amust look beyond the
pleadings@ the supreme court=s statement in Intratex
that Ain determining whether
the class certification requirements have been satisfied, the trial court may
look beyond the pleadings.@  Bernal, 22 S.W.3d at 435; Intratex,
22 S.W.3d at 404 (emphasis added). 
Similarly, we do not read Bernal as overruling the supreme court=s statement in In
re Alford that A[i]n some cases, the
certification decision can be made primarily on the basis of the pleadings,
postponing and potentially eliminating the need for classwide discovery.@ In re Alford Chevrolet-Geo,
997 S.W.2d 173, 182 (Tex. 1999).  








In any event, the certification order recites factfindings that the
trial court drew from material outside the pleadings, including deposition
testimony that appellees introduced at the certification hearing.  Snyder=s real complaint on
appeal is not that the trial court did not consider material outside the
pleadings in certifying the class, but that it did not consider Snyder=s summary judgment
materials.  Having determined that the
trial court was not required to consider Snyder=s summary judgment evidence, we hold that the
trial court did not commit any error of law in the materials it considered in
ruling on the certification question.  We
overrule Snyder=s first issue.  

In its second issue, Snyder contends that the trial court erroneously
concluded that common issues predominated over individual issues and did not
determine that a class action was a superior method for fair and efficient
resolution of the claims.  

                          B.  Commonality, Predominance, and Superiority

                                                    1.  Definitions

                              a.  Commonality and Predominance Defined








The proponent of class certification must establish that there are
questions of law or fact common to the class. 
Tex. R. Civ. P. 42(a); Bernal,
22 S.W.3d at 433.  AQuestions common to
the class@ are questions, when
answered as to one class member, that are answered as to all class
members.  City of Pharr, 962
S.W.2d at 641.  This requirement
does not mean that all or even a substantial portion of the legal and factual
questions must be common to the class.  A
single common question may provide adequate grounds for a class action under
appropriate circumstances.  Id.; see
Sun Coast Res., Inc. v. Cooper, 967 S.W.2d 525, 532 (Tex. App.BHouston [1st Dist.]
1998, pet. dism=d w.o.j.) (AThe threshold of >commonality= is not high.@) (quoting Jenkins
v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986)).  

Further, commonality is satisfied if the class members were subject to
the same misrepresentations and omissions. 
See Tana Oil, 978 S.W.2d at 738 
(finding commonality and predominance when the suit involved
interpretation of a contract term that affected all class members).  In most cases in which appellate courts have
found an absence of commonality, the opinions have emphasized the great factual
diversity of the individual claims and the ultimate dependence of any common
legal questions on the facts of each individual claim.  See, e.g., Bernal, 22 S.W.3d at 436. 

The commonality requirement under rule 42(a) is distinguished from the
more stringent provision of rule 42(b)(4) that common questions of law or fact
must predominate over questions involving individual members.  Tex.
R. Civ. P. 42(a); Tex. R.
Civ. P. 42(b)(4); Bernal, 22 S.W.3d at 433.  Rule 42(b)(4) describes only one of several
types of authorized class actions.   Tex. R. Civ. P. 42(b).  If a predominance-of-common-questions class
action is asserted, the commonality determination is subsumed under the
predominance determination.  Wood,
994 S.W.2d at 802.  The predominance test
is used to determine whether common issues predominate over individual issues,
and inquires whether common or individual issues will be the object of most of
the efforts of the litigants and the court. 
Bernal, 22 S.W.3d at 434.  








The predominance requirement is Aone of the most
stringent prerequisites to class certification.@  Id.
at 433.  Rule 42(b)(4) contains a
non-exhaustive list of factors that are relevant to the predominance
inquiry:  (1) the interest of members of
the class in individually controlling the prosecution or defense of their
particular actions; (2) the extent and nature of any litigation concerning the
controversy already commenced by or against members of the class; (3) the
desirability or undesirability of concentrating the litigation of the claims in
the particular forum; and (4) the difficulties likely to be encountered in the
management of a class action.  Tex. R. Civ. P. 42(b)(4); Bernal,
22 S.W.3d at 433-34.  

A trial court ruling on commonality and predominance must first
identify the substantive issues controlling the litigation=s outcome.  Graebel/Houston Movers, Inc. v. Chastain,
26 S.W.3d 24, 33 (Tex. App.BHouston [1st Dist.]
2000, pet. dism=d w.o.j.).  The purpose of this requirement is to
determine whether the character and nature of the case satisfy the requirements
of the class-action procedural rule, not to weigh the substantive merits of
each class member=s claim.  Id. 


Next, the trial court must correctly identify the elements of the
named plaintiffs= causes of
action.  Then:

[t]he question the
court must decide before certifying a class, after rigorous analysis and not
merely a lick and a prayer, is whether the plaintiffs have demonstrated that
they can meet their burden of proof in such a way that common issues
predominate over individual ones.  

 

Schein,  2002 WL 31426407, at *13.  








In Schein, A[t]he court of appeals
premised its affirmance of the order on the mistaken belief that reliance was
not an element of the plaintiffs= principal causes of
action.@  If A>individual reliance is
necessary to prove actual damages, a class action may not be certified on this
issue.=@ Id. at *14
(quoting Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 440 (5th
Cir. 2000)).  On the other hand, A[i]f a plaintiff could
prove reliance in an individual action with the same evidence offered to show
class-wide reliance, then the issue is one of law and fact common to the class.@[12]  Schein,  2002 WL 31426407, at *13.

As to the effect of damages calculations on commonality and
predominance, the fact that damages must be computed separately for each class
member does not necessarily mean that individual issues predominate over common
issues of law and fact.  Cooper,
967 S.W.2d at 534.  Determination of the
amount of actual damages subject to documentary proof, such as Achecks, charge slips,
receipts, or other evidence of payment . . . would be common to the class and
would not require individual examination of class members except in unusual
instances.@  Schein,  2002 WL 31426407, at *14.  Consequential damages, on the other hand,
Awould obviously have
to be determined class member by class member.@  Id.  Similarly, A[s]tate and federal courts have overwhelmingly
rejected class certification where multiple states= laws must be applied.@  Id. at *17 (footnotes omitted). 








As to the effect of defenses on commonality and predominance, Texas
courts have held that the existence of affirmative defenses will not prevent
class certification. Chastain, 26 S.W.3d at 30; see, e.g., Manning,
914 S.W.2d at 613-14 (contributory negligence, superseding cause, and failure
to comply with warranty); Dresser Indus., Inc. v. Snell, 847 S.W.2d 367,
373 (Tex. App.BEl Paso 1993, no writ)
(limitations, lack of misrepresentation, and ratification). 

                                              b.  Superiority Defined

A class action is the superior method of adjudicating claims when Athe benefits of
class-wide resolution of common issues outweigh any difficulties that may arise
in the management of the class.@  Hankins, 51 S.W.3d at 754; Chastain,
26 S.W.3d at 34.  In determining
whether a class action is superior, factors the trial court may consider
include: (1) class members will benefit from the discovery that has already
been completed, thereby eliminating duplication of effort; (2) the trial court
has already spent substantial time and effort becoming familiar with the issues
of the case, which weighs favorably for a fair and expeditious result; and (3)
class members have an interest in resolving common issues by class action.  Hankins, 51 S.W.3d at 754-55.

                             2.  The Certification MaterialsBCommonality,

                                        Predominance
and Superiority

 








Appellees introduced as exhibits during the hearing APlaintiffs= Second Amended
Original Petition and Demand for Jury Trial,@ an agreement entitled ASnyder CommunicationsBConsumer Markets Sales
Procedures and Payment Policies@ that provided for
signatures of the employee and a Snyder representative, and an agreement
entitled AAT&T Sales
Associate Commission Plan@ that also provided
for the signatures of both parties. 
Snyder=s budget director
testified by deposition that the direct sales procedures and compensation
policies set out in the agreements, as modified from time to time, applied
nationwide within Snyder=s organization.  He acknowledged that data processing
criteria, commission and bonus schemes, supervisory structure, pay parameters,
and Letter of Authority writing and rejection standards applied
company-wide.  He also agreed that all of
the sales associates employed by Snyder would have had Letters of Authority
rejected at one time or another. 

The budget director also testified that Snyder had twenty to
twenty-five offices throughout the United States, including Los Angeles,
Seattle, Dallas, San Antonio, Houston, New York, Miami, Orlando, Philadelphia,
Washington, D.C., and Chicago.  Snyder=s counsel represented
to the court that there was a similar lawsuit in California that had recently
settled and another, with two plaintiffs, pending in Corpus Christi,
Texas.  The AAT&T Sales
Associate Commission Plan@ introduced into
evidence by appellees contains tables that show commissions and bonuses from
$.50 to $13.00 based on volume and percentages of performance and quality
goals.  

Appellee Josefina Magana testified by deposition that she left her
position as sales associate for Snyder because it was not paying the
commissions it owed her.  She also
testified that one of Snyder=s vice presidents,
when asked why the commissions were not being paid in full, said that Athe problem was
present in all the company, not just in McAllen, in the whole company,@ and that Ahe would do his best B the best he possibly
could in his job to make sure that these commissions would be paid to the
employees within the whole of Snyder, within the whole of the United States.@     








Snyder argued to the trial court that each claim by each class member
of non-payment of a commission or bonus is subject to one or more of Snyder=s defenses and must be
determined on a case-by-case basis. 
Therefore, Snyder concluded, individual issues predominate over common
issues of law and fact.  

          3.  The Findings of FactBCommonality,
Predominance, and Superiority 

The trial court made the following findings of fact in the
certification order regarding commonality, predominance, and superiority:

1.       Throughout the United
States of America, Defendant Snyder Communications, L.P. hired sales associates
or field representatives to market residential telephone service for
AT&T.  

 

 2.      Defendant employed these sales associates or field
representatives at approximately twenty to twenty-five locations throughout the
United States of America.

 

 3.      Defendant employed these sales associates or field
representatives on a commission basis.  

 

 4.      Defendant employed these sales associates or field
representatives pursuant to a written contract. 


 

                                                          *
* *

 8.      It is unlikely that class members would be able to prosecute
individual lawsuits.  

 

 9.      There are common questions of law or fact affecting the
class.  These common questions of law or
fact predominate over questions involving individual class members and will be
the object of most of the efforts of the litigants and the court.  

 

10.     A class action is
superior to other available methods for the fair and efficient adjudication of
the controversy.  

 

11.     The Plaintiffs are
alleging that the Defendant engaged in a common course of conduct with regard
to all class members.  








12.     The Plaintiffs are
alleging that all members of the class were subject to the same
misrepresentation(s) by the Defendant.

 

13.     The claims of the class
representatives arise from the same event or course of conduct giving rise to
the claims of the other class members and are based on the same legal
theories.  

 

                                                          *
* *

In this case, the
putative class members are dispersed throughout the United States.  It is impracticable for a class member in
California, New York, Chicago or Florida to join as a named plaintiff in this
Hidalgo County litigation in order to recover what individually might be a
small sum.  

 

           
        The Court notes that the
Corporate Representative of Defendant Snyder Communications, L.P. admitted at
his deposition that at any given time Defendant employed approximately 500
persons as sales associates or field representatives.  These persons were employed at one of 20-25
offices in the United States. 
Additionally, the Court notes that one of the class representatives
testified in her deposition that the vice-president of Defendant visited
Defendant=s McAllen location and
informed her that Defendant=s problem with paying
commissions was company-wide throughout the United States. . . . 

 

        4.  The Conclusions of LawBCommonality,
Predominance, and Superiority 

The
trial court made the following conclusions of law in the certification order
applicable to commonality, predominance, and superiority:

 








Plaintiffs= petition shows on its
face that all questions of law and fact affecting the class are
common.  The Court therefore finds that
the questions of law or fact common to the members of the class predominate
over any question affecting only individual members, and that a class action is
superior to other available methods for the fair and efficient adjudication of
the controversy.  The matters pertinent
to this finding include: the interest of members of the class in individually
controlling the prosecution or defense of separate actions; the extent and
nature of any litigation concerning the controversy already commenced by or
against members of the class; the desirability or undesirability of
concentrating the litigation of the claims in a particular forum and the
difficulties likely to be encountered in the management of a class action.  The following are some of the common issues
raised in the pleadings:

 

(a)      whether Defendant=s actions constitute
breach of contract;

 

(b)      whether Defendant
engaged in common law fraud or misrepresentation.

 

These issues are similar in many respects to the issues recently
considered by the Austin Court of Appeals in Henry Schein, Inc. v. Stromboe,
28 S.W.3d 196, 205 (Tex. App.BAustin 2000).  In Henry Schein, the court concluded
that the issues, including misrepresentation and breach of contract, were
common to the class.  This Court finds
that Plaintiffs= issues are common as
well.  Defendant=s alleged
misrepresentations are substantially similar and Defendant is alleged to have
engaged in a common course of conduct. 
See Henry Schein, 28 S.W.3d at 206; Texas Commerce v. Wood,
994 S.W.2d 796, 803 (Tex. App.BCorpus Christi, 1999);
Weatherly, 905 S.W.2d at 651.  Adams
v. Reagan, 791 S.W.2d 284, 289 (Tex. App.BFort Worth 1990, no writ). 

 

The alleged breach of contract and misrepresentations were uniform to
all class members.  If these issues are
resolved as to Plaintiffs, they will be resolved as to all members of the
proposed class.  These issues are
therefore common issues because an answer as to one class member is an answer
as to all class members.  See Shein
[sic], 28 S.W.3d at 206; Weatherly, 905 S.W.2d at 648.  Those questions that do not produce common
answers are not common questions under Rule 42.  See Wente v. Georgia-Pac. Corp., 712
S.W.2d 253, 257 (Tex. App.BAustin 1985, no writ).  

 

All of the issues in this case are common to the class and Plaintiffs
have therefore satisfied the requirements set forth in 42(a) and 42(b)(4). 

 

                       5.  Application of the Law to the FactsB 

                             Commonality,
Predominance, and Superiority

 

                            a.  The Commonality and Predominance Issue








The trial court cited the lower court Schein decision in its
commonality analysis.  Henry Schein,
Inc. v. Stromboe, 28 S.W.3d 196, 205 (Tex. App.BAustin 2000, rev=d, 46 Sup. Ct. J. 103,
2002 WL 31426407 (October 31, 2002). 
However, the trial court did not base its commonality and predominance
decisions solely on Schein, and Snyder has not asserted on appeal that
the trial court committed an error of law in relying on Schein.  Snyder does argue on appeal that three cases
support its contention that the trial court erroneously concluded that common
issues predominated over individual issues: 
Becton Dickinson & Co. v. Usrey, 57 S.W.3d 488 (Tex. App.BFort Worth 2001, no
pet.); Texas Dept. of Trans. v. Barrier, 40 S.W.3d 153 (Tex. App.BHouston [14th Dist.]
2001, no pet.) (op. on reh=g); and E & V
Slack, Inc. v. Shell Oil Co., 969 S.W.2d 565 (Tex. App.BAustin 1998, writ dism=d w.o.j.).  All three cases are distinguishable from the
certification record in this case. 

Usrey was a Amulti-accident,
medical-device@ products liability
case, Aill-suited for class
treatment because there is no single event, cause, or defense,@ in which the trial
court fashioned a summary judgment scheme that did Anot exist anywhere in
the universe of Texas law.@ Usrey, 57
S.W.3d at 494.  Instead, the
certification order Acreate[d] an >alternative universe= where normal
jurisprudential rules and principles [did] not apply, and where the rights and
protections afforded other product liability defendants, such as full and fair
discovery, cross-examination of witnesses, and trial by jury, would be unfairly
restricted, if not entirely denied.@  Usrey, 57 S.W.3d at 497.  Thus, Usrey provides no support for
Snyder=s opposition to
certification in this case. 








Snyder also argues that Barrier is factually similar to the
record here.  We do not find applicable
to this case the claims of flooded homeowners against multiple government
agencies and developers, circumstances in which Avarious factors contributed to the flooding in
varying degrees within each class area.@  Barrier, 40 S.W.3d at 159.  In any event, Barrier reversed the
trial court and remanded the case for further proceedings in light of Bernal,
without prejudice to further consideration of class certification.  Barrier, 40 S.W.3d at 160.  

Finally, Shell Oil affirmed the trial court=s exercise of
discretion in denying class certification, not in certifying the
class.  Shell Oil Co., 969 S.W.2d
at 571.  A court may base a ruling on
contradictory facts and still act within its discretion.  Manning, 914 S.W.2d at 615.  Thus, two courts could examine contradictory
facts and arrive at opposite conclusions without either abusing its
discretion.  Accordingly, Shell Oil
provides no insight into the parameters of a trial court=s exercise of
discretion in certifying a class. 


Snyder also complains on appeal that the trial court committed an
error of law by confusing the commonality and predominance factors in
performing a less stringent commonality analysis instead of subsuming
commonality in the more restrictive predominance analysis.  We disagree. 
The certification order expressly distinguishes between the two related
concepts of commonality and predominance with reference to the facts before it
and the applicable law.  








As to commonality, the trial court found that sales associates
throughout the United States were employed by Snyder on a commission basis
pursuant to a written contract and that Snyder=s representative had acknowledged that a problem
with not paying commissions was Acompany-wide
throughout the United States.@  The trial court also found that appellees
alleged that Snyder had engaged in a common course of conduct with regard to
all class members and that all members of the class were subject to the same
misrepresentations by Snyder.  

As to predominance, the certification order explicitly recites that
the court had reviewed and understood Athe claims of the
plaintiff@ and Athe defenses of
Defendant.@  The trial court also recited within the
certification order the applicable law and factors relevant to a predominance
determination and concluded that Athe questions of law
or fact common to the members of the class predominate over any question
affecting only individual members@








Snyder also argues on appeal that the certification order does not
identify its myriad defenses, and thus the trial court attached no weight to
its individual defenses in determining that common issues of law and fact
predominate over individual claims and defenses.[13]    Snyder contends that within its summary
judgment materials A[t]he company=s records showed that
it had properly accounted for each [Letter of Authority] it had received from
the plaintiffs.@  It further asserts that Snyder Aproved the viability
of its defenses by offering summary judgment proof to support them.  Because the plaintiffs did not dispute the
facts regarding these defensive issues, the district court erred in certifying
the class without taking them into accountBand indeed erred in
certifying a class action at all.@  








Snyder=s arguments focus on
the merits of its defenses, an improper subject for inquiry in certification of
the class.  Intratex, 22 S.W.2d at
404; Lopez, 45 S.W.3d at 191. 
AThere are several
procedural mechanisms with which a defendant may properly challenge the
viability of a plaintiff=s causes of action.  See, e.g., Tex. R. Civ. P. 91 (special exceptions) and Tex. R. Civ. P. 166a (summary
judgment).@  Lopez, 45 S.W.3d at 191.  A class certification proceeding is not one
of them.  We do not believe Bernal
changed this rule.  Id.; see
Lopez II, 2002 WL 31426668, at *1 (ABernal does not require a
trial court to evaluate the merits of the plaintiffs= claims.@).     As
required, the trial court identified the predominant issues in this case:  whether Snyder=s Aactions constitute
breach of contract@ and whether Snyder Aengaged in common law
fraud or misrepresentation.@  See Chastain, 26 S.W.3d
at 34.  The class here encompasses:
(1) Snyder sales associates hired pursuant to identical employment contracts;
(2) a single defendant; and (3) a single unifying compensation and bonus policy
that applied company-wide.[14]  See Tana Oil, 978 S.W.2d at 742.  Snyder contends that because it allegedly has
defenses to each unpaid commission, individual resolution of each rejected
Letter of Authority will predominate over the common issues of law and
fact.  Nothing prevented Snyder from
introducing at the certification hearing materials that demonstrated its point
for the trial court=s consideration in
determining the class certification issue. 
Id. at 743.  It did not do
so.  Although appellees bear the burden
of meeting each requirement of rule 42, including predominance, this
burden did not include introducing into evidence every conceivable document
that might affect the parties= obligations.  Id. 
In any event, even if the trial court had considered Snyder=s summary judgment
materials with regard to the defenses allegedly presented in the materials, the
fact that individual defenses may defeat particular claims does not mean that
individual issues predominate over common issues of law and fact.  Chastain, 26 S.W.3d at 30; see,
e.g., Manning, 914 S.W.2d at 613-14; Dresser Indus., 847 S.W.2d at
373.  We find that the certification
order properly identified the substantive legal issues controlling the
litigation=s outcome.  Chastain, 26 S.W.3d at 33.     








Snyder also argues on appeal that because the trial court did not
specifically identify Snyder=s defenses in the
certification order, the court=s recitation of the
common issues in this case is too general to satisfy the commonality and
predominance requirements of rule 42. 
Tex. R. Civ. P. 42(a);
Tex. R. Civ. P. 42(b).  We note that the Austin court of appeals
recently reviewed similar commonality and predominance issues in National
Western.  Nat=l Western, 86 S.W.3d. at
298-99.  The class members in National
Western each entered into an agreement for insurance coverage pursuant to
virtually identical contracts issued by National.  Id. at 299.  National=s alleged tortious
conduct in failing to refund premiums pursuant to the contracts was uniform for
every class member.  Id.  Therefore, because National engaged in a
common course of conduct and entered into agreements with each class member
based on virtually identical documents, the Austin court of appeals held that
the trial court=s initial
determination that the commonality and predominance requirements had been
satisfied was not an abuse of discretion. 
Id. at 300.  We find it
informative that the Austin court of appeals upheld the trial court=s commonality and
predominance decision in National Western even though National had
interposed statute-of-limitation defenses to each claimant, claims subject to Aproof of each
individual class member=s subjective knowledge
concerning discovery of the injury alleged.@  Id.
at 299.  

Finally, in support of its issue on appeal that the trial court
ignored the requirement that it determine whether a class action was the
superior method of resolving the plaintiffs= claims, in its reply brief Snyder argues that
different legal standards will govern the plaintiffs= fraud and contract
claims throughout the several states involved. 
This choice-of-law issue is properly a challenge to the predominance of
class claims over individual claims.  Schein,
2002 WL 31426407, at *17.

The materials before the trial court indicate the involvement of the
following jurisdictions in addition to Texas: 
California, the District of Columbia, Florida, Illinois, New York,
Pennsylvania, and Washington.  The trial
plan adopted by the trial court recites the elements of the cause of action of
breach of contract in Texas:








(1) the existence of a valid contract; (2) performance or tendered
performance by Plaintiff; (3) breach of the contract by Defendant; and (4)
damage to Plaintiff resulting from that breach. 
Hussong v. Schwan=s Sales Enters, Inc., 895 S.W.2d 320, 326
(Tex. App.BHouston [1st Dist.]
1995, no writ).  

The trial plan also set out the elements of the cause of action of
fraud in Texas:

a material misrepresentation, which was false, and which was either
known to be false when made or was asserted without knowledge of its truth,
which was intended to be acted upon, which was relied upon, and which caused
injury.  Sears Roebuck & Co. v.
Meadows, 877 S.W.2d 281, 282 (Tex. 1994); DeSantis v. Wackenhut Corp.,
793 S.W.2d 670, 688 (Tex. 1990).  








We have examined the elements of breach of contract and fraud in the
other listed jurisdictions.[15]  We recognize that other issues of law may
arise and other jurisdictions may become relevant during this litigation.  However, we did not find any substantive
variations on the basic breach-of-contract and fraud theories of recovery pled
by appellees.  Snyder did not oppose
certification in the trial court on any choice-of-law basis, either in arguing
that commonality and predominance are not present or that superiority of the
class-action device is defeated by any individualized legal analyses demanded
by a nation-wide class.  We agree with the
trial court=s assessment in the
context of numerosity (not challenged on appeal by Snyder):

Defendant does not
seriously dispute that numerosity exists. 
Additionally, Defendant alone has access to the exact numbers and any
argument that Plaintiffs cannot state the exact number of class members is
invalid and pure Asophistry@.  

 








Similarly,
the jurisdictions in which Snyder employed sales associates and the applicable
law in those jurisdictions are known only to Snyder at this juncture, but  Snyder did not oppose certification on
choice-of-law grounds in the trial court. 
The usual rule, based on considerations of fairness, does not place the
burden of proof on a litigant to establish facts peculiarly within the
knowledge of its adversary.  United
States v. New York, N.H. & H.R. Co., 355 U.S. 253, 256 n.5 (1957).  Courts have applied this general rule in the
class-action context by shifting to opponents of class certification the burden
of production of facts demonstrating conflicts of interest between proposed
representatives and the class.  See,
e.g., Lopez, 45 S.W.3d at 192 (recognizing that asserted conflicts of
interest must be evidenced in the record).  
We see no reason to exempt choice-of-law issues in class actions from
this general rule.  See In re:
Ford Motor Co. Ignition Switch Prods. Liability Litig., 174 F.R.D. 332,
350-51 (D. N.J. 1997) (holding that defendants= presentation of the varying legal standards and
burdens of proof applicable to design-defect claims arising in fifty-one
jurisdictions defeated predominance).    









The supreme court in Schein discussed the choice-of-law
questions created by complex consumer-protection laws, which vary markedly from
jurisdiction to jurisdiction.  Schein,
2002 WL 31426407, at *15.  By
contrast, the breach-of-contract and fraud theories of recovery pled by
appellees here are comparatively basic and uniform from jurisdiction to
jurisdiction.  Given the nature of the
claims at issue in this case, we find that appellees were not required to
present any choice-of-law legal arguments to the trial court to meet their
burden to show compliance with the predominance and superiority requirements of
rule 42(b).  Tex. R. Civ. P. 42(b). 
In any event, Snyder does not cite any authority in its reply brief in
arguing that superiority is defeated on choice-of-law grounds by a nation-wide
class.  Issues not supported by
argument and authorities are waived.  Tex.
R. App. P.
38.1(h); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881
S.W.2d 279, 284 (Tex. 1994); Columbia Rio Grande Regional Hosp. v. Stover;
17 S.W.3d 387, 392 (Tex. App.BCorpus Christi 2000, no pet.).  We hold that Snyder waived its complaint that
any choice-of-law questions created by a nation-wide class defeat either
predominance or superiority.[16]








We note that a Kansas federal district court certified a class on
claims similar to those asserted by appellees here.  Smith v. MCI Telecomm., Inc., 124
F.R.D. 665, 669-71 (D. C. Kansas 1989). 
MCI was a long-distance telephone company that employed salespersons to
sell its services to the public under written commission and bonus arrangements
analogous to the written compensation agreements between Snyder and appellees. Id.
at 669.  Smith alleged that MCI defrauded
its employees in a variety of ways that resulted in non-payment of commissions
and bonuses earned by and owed to the employees.  Smith filed suit for breach of contract, for
common-law  fraud, and  under the Racketeer Influenced and Corrupt
Organizations Act.  MCI argued that three
factors defeated typicality, would be the focus of the litigation, and negated
predominance: (1) the individual reliance elements of the causes of action; (2)
a jurisdictional defense based on Smith=s alleged failure to
exhaust administrative remedies; and (3) complex damages issues.  Id. 
The district court certified the class, stating:

Smith=s complaint indicates
that the basic misrepresentation made to the salespersons was that they would
be paid commissions according to the terms of the plans and addenda then in effect.
The plans and addenda were written documents (with the exception of the January
1, 1985, addendum) which were shown to all salespersons. Thus, the basic
misrepresentation giving rise to the fraud claim is uniform (although different
plans were in effect at different times, all salespersons were subject to the
same alleged misrepresentation: that they would be compensated under the terms
of the plan then in effect) and written.

 

Id.
at
678.  Although Snyder has asserted many
more defenses here than MCI did, we are persuaded that the federal court=s predominance
analysis reflects the correct approach.  








The trial court sits in the best position to assess the relative
strength of the class-action mechanism to do justice in any given case.  Tana Oil, 978 S.W.2d at 743.  Accordingly, we decline Snyder=s invitation to
substitute our judgment for that of the trial court. The trial court=s ruling that
appellees satisfied the commonality and predominance requirements of
rule 42(a) and rule 42(b)(4) was not arbitrary, unreasonable, or
without reference to any guiding principles. 
We find that the trial court applied correct legal standards and
properly applied the law to the facts in reaching its decision.  See Lopez, 45 S.W.3d at 186 (reciting
abuse-of-discretion standards);Tana Oil, 978 S.W.2d at 741 (same).  Accordingly, we hold that the trial court did
not abuse its discretion in determining that the class claims asserted by
appellees demonstrated the requisite commonality and that common issues of law
and fact predominated over any individual issues. 

                                            b.  The Superiority Issue








 Snyder also complains in its
second issue that the trial court Adid not determine
whether a class action was superior, but ignored that requirement entirely.@[17]  To the contrary, the certification order sets
out facts the trial court considered, finding that class members are scattered
throughout the United States and that A[i]t is unlikely that
class members would be able to prosecute individual lawsuits.@  Further, the certification order identifies
the substantive breach-of-contract and fraud claims common to the class and
reaches the legal conclusion that Aa class action is
superior to other available methods for the fair and efficient adjudication of
the controversy.@[18]    Snyder
also asserts that A[g]iven that the
summary judgment proof showed that the named plaintiffs had no recovery. . . ,
the court had an obligation to absent class members to determine whether the
class action was a superior method of adjudicating fairly their own claims.@ (emphasis in
original).  The trial court, however,
quite properly did not weigh the substantive merits of the claims and defenses
in determining that the character and nature of the case satisfy the
requirements of rule 42.  Tex. R. Civ. P. 42(a); Tex. R. Civ. P. 42(b)(4); Chastain,
26 S.W.3d at 29.  The trial court did
determine that the class-action device was a superior method of resolving the
claims presented by this lawsuit.  We
overrule Snyder=s second issue.   

We next address Snyder=s fourth issue, which
contends that appellees will not fairly and adequately protect the interests of
the class.  

                                       D.  Adequacy of Representation

                                1.  Adequacy of Representation Defined








The requirement for Aadequacy of
representation@ in rule 42(a) has two
prongs:  (1) it must appear that the
representatives, through their attorneys, will vigorously prosecute the class
claims; and (2) there must be an absence of antagonism or conflict between the
representative=s interest and those
of the class.  Lopez, 45 S.W.3d
at 192.  Factors affecting this
determination include:  (1) the adequacy
of counsel; (2) the potential for conflicts of interest; (3) the personal
integrity of the class representatives; (4) the representative=s familiarity with the
litigation and his or her belief in the legitimacy of the grievance; (5)
whether the class is unmanageable because of geographical limitations; and (6)
whether the class representative can afford to finance the class action.  Id. 
Although class representatives must take an active role, class
certification does not require a higher standard of involvement from a proposed
class representative than from an individual plaintiff.  Weatherly, 905 S.W.2d at 652; see
Manning, 914 S.W.2d at 614-15 (finding that the failure of the class
representatives to attend the certification hearing did not preclude a finding
of adequate representation).  Further,
any asserted conflicts of interest must be evidenced in the record.  Lopez, 45 S.W.3d at 192.  








In Texas, the qualifications and experience of class counsel are of
greater consequence in determining adequacy of representation than the
knowledge of the class representatives.  Weatherly,
905 S.W.2d at 652; Manning, 914 S.W.2d at 614.  Failure of counsel to move for certification
of the class before trial bears strongly on the issue of adequacy of
representation for unnamed class members. 
E. Texas Motor Freight v. Rodriguez, 431 U.S. 395, 405
(1977).  Delay in moving for
certification and prosecuting an action does not show inadequacy of counsel as
a matter of law unless it results in prejudice to the class or opposing party.  See Angeles/Quinoco Sec. Corp. v. Collison,
841 S.W.2d 511, 514 (Tex. App.BHouston [14th Dist.]
1992, no writ) (finding that a five-year delay, limited discovery, and the
appearance of the case on the court=s dismissal docket did
not show inadequacy as a matter of law when the case was complex, there were
ongoing negotiations, and no showing was made that the parties or class were
prejudiced); see also Monsanto Co. v. Davis, 25 S.W.3d 773, 783
(Tex. App.BWaco 2000, pet. dism=d w.o.j.) (finding
that twenty-four months between the filing of the claim and the certification
hearing is not an unreasonable delay absent any showing of the reason for the
delay).  Finally, counsel=s own representations
to the trial court of matters within counsel=s personal knowledge, e.g., regarding the
litigation qualifications and trial experience of the lawyers handling the
case, may support a determination that counsel is adequate to represent the
proposed class.  Cooper, 967
S.W.2d at 539.  

                  2.  The Certification MaterialsBAdequacy of
Representation

At the certification hearing, appellees= counsel represented to the trial court that he
had Aspoken with B what would be the
class representatives, and they are very willing to represent the class in a
class-action suit and vigorously pursue it.@  One of
the appellees testified by deposition that she understood that the difficulty
she had encountered in not getting paid her commissions was a company-wide
problem throughout the United States, evidencing an understanding of the
litigation.  Counsel detailed his own litigation
experience and the extensive litigation experience of four other lawyers
associated on the case, and he testified that associated class counsel was
willing to advance the cost of notice to all class members and that there were
no antagonistic interests involved in the claims. 

          Snyder
claimed to the trial court that its summary judgment materials proved that
several of the named plaintiffs had thrown away the documentation on which
their claims were based and that appellees had been dilatory in conducting
discovery and pursuing the case.  Snyder
argues on appeal that this conduct indicated that the named plaintiffs were not
adequate representatives.  

                       3.  The Findings of FactBAdequacy of
Representation

The trial court made the following findings of fact in the
certification order regarding adequacy of representation:








14.     Plaintiffs are excellent
class representatives.  They bring this
class action with the intention to vigorously prosecute the class claims.  There are no conflicts or antagonism between
the class representatives and the class members.  The class representatives will fairly and
adequately represent the interests of the class.  

 

15.     Similarly, class counsel
are sufficiently qualified and experienced to prosecute the action
vigorously.  Counsel for Plaintiffs have
agreed to advance the costs of notice to all class members.  

 

16.     There is no conflict of
interest between counsel for the class and the class.  

 

                    4.  The Conclusions of LawBAdequacy of
Representation

The trial court made the following conclusions of law in the
certification order regarding adequacy of representation:

Plaintiffs have shown that they are willing to be class
representatives through their commitment to this case.  Defendant has wholly failed to show any
conflict between Plaintiffs and the class members, much less one that Agoes to the very
subject matter of the litigation.@  

 

In fact, the typicality of Plaintiffs= claims compared to those of the class members
demonstrates conclusively that no antagonism of any type exists in this
case.  See Microsoft, 914
S.W.2d at 614 (AThis issue often is
collapsed into typicality analysis.@).  Plaintiffs have no interests adverse to other
members of the class.  

 

Courts look to class counsel, not the named plaintiff, to determine
whether vigorous prosecution is probable. 
Texas law does not require a higher standard of involvement from a
proposed class representative than from an individual plaintiff.  Weatherly, 905 S.W.2d at 652.  The qualifications and experience of the
class counsel is of greater consequence than the knowledge of the class
representatives.  Microsoft, 914
S.W.2d at 614; Weatherly, 905 S.W.2d at 652.  

 








Class counsel in this case are well qualified and experienced to
prosecute this suit vigorously.  In
addition, counsel have agreed to advance all costs notifying the class if the
Court certifies this case to proceed as a class action.  

 

          5. 
Application of the Law to the FactsBAdequacy of Representation

 

Snyder=s factual assertions
regarding appellees= alleged dilatory
prosecution of the case, abusive conduct in discovery, and destruction of
documents are not supported by the record before the trial court with regard to
the certification hearing.  As noted
above, the record does not reflect that Snyder asked the trial court to
consider the summary judgment and discovery materials in making its
certification determination.  Thus, the
trial court was not required to consider Snyder=s factual assertions, unsupported by material in
the record, regarding the adequacy of appellees as class representatives.  Methodist Hosp., 972 S.W.2d at
899.  








The trial court found that Aclass counsel are
sufficiently qualified and experienced to prosecute the action vigorously.@  Counsel=s representations to
the trial court about the extensive litigation experience of the lawyers
handling the case, as well as their commitment to advancing the expenses of
notice to the class, supported the trial court=s determination that counsel are adequate to
represent the proposed class.[19]  Cooper, 967 S.W.2d at 539; Manning,
914 S.W.2d at 614.  The record does not
reflect any conflicts of interest between the named plaintiffs and other class
members or between counsel and the class. 
Lopez, 45 S.W.3d at 192. 
Nor do we find that the record here shows that the delay of nine months
in moving for certification and prosecuting this case as a class action
resulted in prejudice to the class or to Snyder so as to render appellees
inadequate class representatives.  Davis,
25 S.W.3d at 783; Collison, 841 S.W.2d at 514-15.  

Finally, class certification does not require any higher standard of
involvement from a proposed class representative than from an individual
plaintiff.  Weatherly, 905 S.W.2d
at 652; Manning, 914 S.W.2d at 614. 
Counsel represented to the court that appellees had indicated their
willingness to pursue the class action and had no conflicts or antagonism with
the class, facts within the attorney=s knowledge.  See Cooper, 967 at 539.  Snyder introduced no materials to the
contrary.  Lopez, 45 S.W.3d
at 192.  Moreover, even if the trial
court had considered Snyder=s summary judgment
materials and even if it had agreed that the materials demonstrated the
inadequacy of the proposed class representatives, in the face of contradictory
evidence of adequacy the trial court would not have abused its discretion in
concluding that the named plaintiffs were adequate representatives.  Manning, 914 S.W.2d at 615.








Without substituting our judgment for that of the trial court, we find
that the trial court=s conclusion of law
that appellees are adequate class representatives was not arbitrary,
unreasonable, or without reference to any guiding principles.  We find that the court applied correct legal
standards and properly applied the law to the facts in reaching its decision.  See Lopez, 45 S.W.3d at 186 (reciting
abuse-of-discretion standards); Tana Oil, 978 S.W.2d at 741 (same).  Accordingly, we hold that the trial court did
not abuse its discretion in determining that appellees would fairly and
adequately represent the interests of the class.  We overrule appellant=s fourth issue.








In sum, our review of the record and the certification order in this
case indicates that the trial court conducted a thorough certification hearing
in which it went beyond the parties= pleadings in order to
understand the claims, defenses, relevant facts, and applicable substantive law
of this case, then made a meaningful determination of the certification
issues.  The record before us indicates that
the trial court conducted a rigorous analysis of all issues presented and
arrived at a cautious decision in certifying the class.  The extensive and detailed certification
order, findings of fact, and conclusions of law demonstrate that the trial
court conducted a rigorous review of the information presented.[20]  It determined that this case met the Bernal
test of actual, rather than merely presumed, compliance with the
requirements of rule 42.  We find that
the trial court acted within its discretion in making an informed, cautious,
and proper decision that common issues predominated over individual issues;
that it determined that all issues in this case could be considered in a class
action in a manageable, time-efficient, and fair manner that would be superior
to individual pursuit of these small, geographically scattered claims; and that
it acted within its discretion in finding that the named plaintiffs and their
counsel are adequate representatives.  Nat=l Western, 86 S.W.3d at 303; Cooper,
967 S.W.2d at 539.  We hold that the
trial court did not abuse its discretion in certifying the class. 

In its third issue, Snyder asserts that the trial plan does not permit
consideration of its individual defenses. 


                          V.  SNYDER=S CHALLENGE TO THE TRIAL PLAN

                                            A.  Preservation of Error

Appellees argue on appeal that Snyder waived any complaint about the
trial plan that the court included in the certification order by not objecting
after entry of the order.   Because
Snyder opposed certification altogether, we agree with Snyder and hold that a
post-ruling objection to the trial plan was not necessary to preserve
error.  See Barrier, 40 S.W.3d at
156 (holding that a post-ruling objection to a modified class definition was
not necessary to preserve error where the appellant had objected to certification
itself).    

                                    B.  The Requirements of a Trial Plan








The supreme court in Bernal stated that Ait is improper to
certify a class without knowing how the claims can and will likely be tried,@ mandating that a
court=s certification order
indicate how claims will be tried so that compliance with the requirements of
class certification can be meaningfully evaluated.  Bernal, 22 S.W.3d at 435.  The certification order should identify the
causes of action, how those causes of action would be tried, how liability for
each defendant would be determined, and how damages for each of the plaintiffs
would be determined.  W. Teleservices,
Inc. v. Carney, 37 S.W.3d 36, 42 (Tex. App.BSan Antonio 2000, no pet.).  The trial plan also must indicate a method
for resolving individual issues.  Nissan,
27 S.W.3d at 592.  

                      C.  The Trial Plan Established in the
Certification Order

ABecause the issues in
this case are common,@ the trial court found
in its certification order, Athe trial plan is
relatively simple and can be accomplished by one jury in one trial.@  The trial plan identified the following
steps:

1.       The Plaintiff Class
Representatives will present their individual cases.

 

2.       Unless a directed
verdict is appropriate at the close of Plaintiffs= case, their case will be presented to the jury
for determination.  

3.       Plaintiffs= causes of action are
for (1) breach of contract and (2) common law fraud and misrepresentation.

 

The elements of breach of contract cause of action are (1) the
existence of a valid contract; (2) performance or tendered performance by
Plaintiff; (3) breach of the contract by Defendant; and (4) damage to Plaintiff
resulting from that breach.

 

The elements of fraud are a material misrepresentation, which was
false, and which was either known to be false when made or was asserted without
knowledge of its truth, which was intended to be acted upon, which was relied
upon, and which caused injury.  

 

4.       The jury will be asked
to determine whether the representations made by Defendant constitute common
law fraud or misrepresentation.  The jury
will further be asked to determine the liability of Defendant and any
individual defenses raised by Defendant. 
If there is a finding of liability and an award of actual damages, the
jury will determine punitive damages, if any, as authorized by law.  

 








5.       If the jury returns a verdict
against Plaintiffs, the trial will end and judgment against Plaintiffs and the
class will be entered.  If the jury finds
for Plaintiffs, it is possible that the Court can render a judgment for the
class based on the jury findings.  If
not, the trial will continue as to the class. 


 

6.       Because the breach of
contract and representations to class members are virtually identical, proof of
liability and damages can be established on a broad basis as to the class,
using summaries to documents as permitted by the rules of evidence, expert
opinion, or similar methods.  A Master
may also be used to review documents and determine damages based on a
formula.  

 

7.       If the trial continues,
the jury would also be asked to determine any remaining issues relevant to the
class and any classwide defenses raised by Defendant.  The jury would also be asked to determine the
actual damages for the remaining class members. 
The next phase will involve the jury=s determination of punitive damages for the class
members, as authorized by law.  

 

8.       Final judgment will be based on the jury
verdict.

 

                     D.  Application of the Law to the Trial Plan

 

To summarize, the trial plan calls for a single jury to try this case
in four phases.  The first phase will
determine liability and damages with regard to the named plaintiffs.  The trial plan specifically provides for
presentation of Snyder=s individual defenses
to the claims.  The second phase will
address punitive damages if the jury verdict from the first phase justifies
such a submission, after which the plan provides for two alternatives: (1) the
trial will end and judgment will be entered for the plaintiffs and the class;
or (2) the trial will continue as to the class. 
In the event trial continues as to the class, the third phase calls for
a determination of class-wide liability and damages, again with an opportunity
for Snyder to present its class-wide defenses. 
The fourth phase would address punitive damages as to the class if
required.  








Snyder claims on appeal we must reject this trial plan because: (1) it
negates commonality on its face by recognizing that judgment as to the class
representatives may not be binding as to the class; (2) it unduly restricts
Snyder from presenting viable defenses; and (3) it contains no proposed
formula, expert opinion, or Asimilar methods@ that a master will
use to systematize analysis of class liability and damages.  We disagree. 


First, Snyder has cited no authority for its proposition that an
alternative trial plan as adopted by the trial court is error and so has waived
that complaint.  Tex. R. App. P. 38.1(h); Fredonia State Bank, 881
S.W.2d at 284; Stover; 17 S.W.3d at 392. 
In
any event, a trial court may provide for alternative trial plans in
acknowledgment of the difficulty inherent in determining with exactness in a
class action=s infancy how the case
will develop.  Farmer=s Ins. Exchange v.
Leonard,
No. 03-01-00649-CV, 2002 Tex. App. LEXIS 6294 at *34-*35 (Tex. App.BAustin, August 30,
2002, no pet. h.) (not yet released for publication in the permanent law
reports).  Second, the trial plan
specifically provides for presentation of Snyder=s defenses, both as to the named plaintiffs and
as to the class.  Third, Snyder again
provides no authority to support its argument that the trial plan must detail
the precise mechanism by which analyses of the claims will be systematized, and
so Snyder has waived the complaint.  Tex. R. App. P. 38.1(h); Fredonia
State Bank, 881 S.W.2d at 284; Stover; 17 S.W.3d at 392.  We note that the MCI Telecommunications
court commented as follows with regard to the way the claims in that case could
be expeditiously handled:








[E]ach sale resulting
in a miscalculated commission would not have to be examined. Rather, Smith
could present adequate evidence indicating MCI=s alleged pattern of action, the fact-finder
could make its determination regarding MCI=s liability, and the
parties could then present the court with summaries of their positions on the
issue of what MCI paid and what MCI actually owed. In sum, the damages
allegedly suffered by the proposed class members were all of the same type, and
the calculation of damages following a ruling in favor of the class would be a
largely mechanical task.

 

MCI
Telecomm.,
124 F.R.D. at 678.  The trial plan here
contemplates a similar process.  

The trial court has broad discretion in managing this litigation. Tex R. Civ. P. 42(c)(1).  Its efforts far exceed the Alick and a prayer@ pilloried in Schein,
where the trial court adopted no trial plan at all.  Schein, 2002 WL 31426407, at
*13.  We cannot say that the trial court=s characterization of
its preliminary determinations concerning the management of these claims was
arbitrary, unreasonable, or without reference to any guiding principles.  See Lopez, 45 S.W.3d at 186 (reciting
abuse-of-discretion standards);Tana Oil, 978 S.W.2d at 741 (same).  We hold that the trial court did not abuse
its discretion in devising the trial plan for this case.   We overrule Snyder=s third issue.

                                                 VI.  CONCLUSION

We
affirm the trial court=s order granting class
certification and adopting a trial plan.                                                                             

ERRLINDA
CASTILLO

Justice

 

Publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 27th day of
November, 2002.











[1]
A party may challenge by interlocutory appeal to the court of appeals matters
pertaining to the granting or denial of class certification.  Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(3) (Vernon Supp. 2002); Cent. Power & Light Co. v. City of San
Juan, 962 S.W.2d 602, 607 (Tex. App.BCorpus
Christi 1998, pet. dism=d w.o.j.).





[2]
Snyder=s affirmative
defenses include statute of limitations, laches, statute of frauds, payment,
failure to mitigate, justification, mutual mistake, offset, ratification,
rescission, criminal acts, contractual contingency, waiver, release, estoppel,
accord and satisfaction, contributory negligence, failure of consideration,
fraud, and illegality.  





[3]
The supreme court only has jurisdiction to review a court of appeals=
decision on an interlocutory class-action appeal when there is disagreement
among the justices of the court of appeals on a material question of law or the
court of appeals= decision
conflicts with a prior decision of another court of appeals or of the supreme
court.  Tex.
Gov=t Code Ann. '' 22.225(c)
(Vernon (1988); Henry Schein, Inc. v. Stromboe,46
Sup. Ct. J. 103, 2002 WL 31426407, at *8 (October 31, 2002).  





[4]
Of course, while the flexibility of class-action procedural rules enhances the
usefulness of the class-action device, actual, not presumed, conformance
remains indispensable.  Gen. Tel. Co.
v. Falcon, 457 U.S. 147, 160 (1982) (interpreting rule 23).  Courts must be mindful that the text of
class-action procedural rules Alimits
judicial inventiveness.@  Amchem Prods. Inc. v. Windsor, 521
U.S. 591, 620 (1997); Southwestern Ref. Co., Inc. v. Bernal, 22 S.W.3d
425, 435 (Tex. 2000); see Gen. Motors Corp. v. Bloyed, 916 S.W.2d 949,
954 (Tex. 1995) (emphasizing Athe
importance of the trial court=s
obligation to determine that the protective requirements of Texas Rule 42 are
met@). 





[5]
Intermediate appellate courts throughout Texas have applied the Afavorable
light@ construct in
reviewing class certification orders.  See,
e.g., Vinson v. Texas Commerce Bank-Houston Nat=l
Ass=n, 880
S.W.2d 820, 823 (Tex. App.BDallas
1994, no writ); Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 371-72
(Tex. App.BEl Paso 1993,
no writ); Angeles/Quinoco Sec. Corp. v. Collison, 841 S.W.2d 511, 512
(Tex. App.BHouston [14th
Dist] 1992, no writ); Adams v. Reagan, 791 S.W.2d 284, 287 (Tex. App.BFort
Worth 1990, no writ).  The Afavorable
light@ construct also
has been used in reviewing other trial court actions under an abuse-of-discretion
standard.  See, e.g., Thedford v.
White, 37 S.W.3d 494, 496-97 (Tex. App.BTyler
2000, no pet.) (guardianship case); State ex rel. Texas Dep=t
of Mental Health & Mental Retardation v. Ellison,
914 S.W.2d 679, 682 (Tex. App.BAustin
1996, no writ) (guardianship case); Velez v. De Lara, 905 S.W.2d 43, 45
(Tex. App.BSan Antonio
1995, no writ) (discovery sanctions); Powell v. Swanson, 893 S.W.2d 161,
163 (Tex. App.BHouston [1st
Dist.] 1995, no writ) (paternity suit); Humphrey v. Camelot Retirement
Comty, 893 S.W.2d 55, 59 (Tex. AppBCorpus
Christi 1994, no writ) (breach of contract case); Hatteberg v. Hatteberg,
933 S.W.2d 522, 526 (Tex. App.BHouston
[1st Dist.] 1994, no writ) (divorce action); Ocean Transp. v. Greycas, Inc.,
878 S.W.2d 256, 269 (Tex. App.BCorpus
Christi 1994, writ denied) (Deceptive Trade Practices Act case); Holley v.
Holley, 864 S.W.2d 703, 706 (Tex. App.BHouston
[1st Dist.] 1993, writ denied) (child support modification suit); Abcon
Paving, Inc. v. Crissup, 820 S.W.2d 951, 954 (Tex. App.B
Fort Worth 1991, no writ) (discovery sanctions); Elbaor v. Sanderson,
817 S.W.2d 826, 828 (Tex. App.BFort
Worth 1991, no writ) (bad faith counterclaim under Deceptive Trade Practices
Act); Sims v. State, 816 S.W.2d 508, 508 (Tex. App.B
Houston [1st Dist.] 1991, no writ) (involuntary commitment proceeding); In
re Marriage of Edwards, 804 S.W.2d 653, 656 (Tex. App.BAmarillo
1991, no writ) (child support modification suit); Escue v. Reed, 790
S.W.2d 717, 720 (Tex. App.BEl
Paso 1990, no writ) (child support modification suit).     





[6]
The Schein court did not elucidate whether the Abenefit
of the doubt@ standard is
more deferential or less deferential than the traditional abuse-of-discretion
analytical construct that we do not reverse a trial court=s
decision unless it is arbitrary, unreasonable, or without reference to any
guiding principles.  See State Farm
Mut. Auto. Ins. Co. v. Lopez, 45 S.W.3d 182, 186 (Tex. App.BCorpus
Christi 2001, pet. dism=d w.o.j.)
(reciting analytical constructs applicable to the abuse-of-discretion
standard).





[7]
The Schein court did not discuss whether its repudiation of the Afavorable
light@ construct  is meant as a clarification of the
abuse-of-discretion standard as generally applied in Texas, thus disallowing
use of the construct in all abuse-of-discretion reviews, see note 5, infra,
or whether it  means that the
standard for abuse-of-discretion review in class certification cases now stands
alone.





[8]
The supreme court=s condemnation
of an analytical construct that appears repeatedly in court of appeals=
decisions seems to call the precedential value of those opinions into
question.  We note that in a companion
case to Bernal, the supreme court cited a court of appeals=
opinion in which the Afavorable light@
construct was recited.  Ford Motor Co.
v. Sheldon, 22 S.W.3d 444, 452-53 (Tex. 2000) (citing Weatherly v.
Deloitte & Touche, 905 S.W.2d 642, 647 (Tex. App.BHouston
[14th Dist.] 1995, writ dism=d
w.o.j., mandamus denied, 951 S.W.2d 394 (Tex. 1997))).  In the absence of any instruction from the
supreme court in this regard, for purposes of this opinion we reviewed each of
the pre-Schein cases cited in this opinion before according any
precedential value to the opinion.  We
only cite a case in this opinion after determining that it appears that the
reviewing court did not rely on any presumptions in holding that the trial
court had not abused its discretion in certifying the class.  





[9]
Since ultimately we do not find it necessary to give the trial court the Abenefit
of the doubt@ on any issues
before us in this appeal, we do not reach the question as to whether we must
apply that standard in reviewing a trial court=s
decisions in a class action outside the context of witness credibility.  Schein, 2002 WL 31426407,
at *10.  





[10]
We note that none of the voluminous exhibits attached to Snyder=s
motions for summary judgment was authenticated or supported by affidavit,
including hundreds of pages of computer print-outs containing unexplained abbreviations,
columns, and figures.  Tex. R. Civ. P. 166a(f).  Snyder also did not identify for the court
which of its defenses were allegedly proved by the materials, nor did Snyder
inform the court how the materials substantiated Snyder=s
defenses.  





[11]
Historically, the analytical constructs employed by courts of appeal in
reviewing class certification decisions may have resulted, at least in part,
from proponents and opponents of certification confusing the rule that permits
submission of materials at a certification hearing without proving an
evidentiary predicate with relaxation of the general rule that materials
submitted to a court must be formally introduced and made a part of the
record.   





[12]
Schein declined to Adecide
whether a class asserting a cause of action requiring proof of reliance, like
the class alleged here, can ever be certified.@  Schein,  2002 WL 31426407, at *14.  





[13]
We note that Snyder filed a general denial in response to appellees=
individual claims in their original petition, but pleaded more than thirty
specific or affirmative defenses in its answer to the amended petition
asserting a class action.  We do not read
Bernal >s requirement
that the trial court perform a Arigorous
analysis@ in applying
rule 42 as permitting a defendant to defeat class certification merely by
alleging every conceivable defense to the claims.  





[14]
The AAT&T Sales
Associate Commission Plan@ introduced at
the certification hearing was only one of several versions of the compensation
scheme applicable to Snyder sales associates over time, but Snyder acknowledged
that each commission plan, when effective, applied company-wide.  





[15]
As to breach of contract:  Amelco
Elec. v. City of Thousand Oaks, 38 P.3d 1120, 1129-30 (Cal. 2002) ((1)
existence of contract; (2) performance or excuse for nonperformance; (3)
breach; and (4) damage); Bembery v. District of Columbia, 758 S.2d. 518,
520 (D.C. 2000) ((1) contract; (2) unjustified failure to perform; and (3)
damages);  AIB Mortgage Co. v. Sweeney,
687 So. 2d 68, 69 (Fla. Dist. Ct. App. 1997 ) ((1) the existence of a contract;
a breach; and damages); Barille v. Sears Roebuck & Co., 682 N.E.2d
118, 121(Ill. App. Ct. 1997) ((1) an offer and acceptance; (2) consideration;
(3) definite and certain terms of the contract; (4) plaintiff=s
performance of all required contractual conditions; (5) defendant=s
breach of the terms of the contract; and (6) damage resulting from the breach);
Ledain v. Town of Ontario,  746
N.Y.S.2d 760, 763 (N.Y. Sup. Ct. 2002) ((1) formation of a contract between
plaintiff and defendant; (2) performance by plaintiff; (3) defendant=s
failure to perform; and (4) resulting damage); Corestates Bank v. Cutillo,
723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) ((1) the existence of a contract,
including its essential terms; (2) a breach of a duty imposed by the contract;
and (3) resultant damages);Northwest Indep. Forest Mfrs. v. Dep=t
of Labor & Indus., 899 P.2d 6, 6-7 (Wash. Ct. App.1995)
((1) contract; (2) breach; and (3) damages); see also Restatement (Second) of Contracts, ' 1
(1977) (AA contract is a
promise or a set of promises for the breach of which the law gives a remedy, or
the performance of which the law in some way recognizes as a duty.@).  

 

As to  fraud: Lazar v.
Superior Court, 909 P.2d 981, 985 (Cal. 1996) ((1) misrepresentation; (2)
knowledge of its falsity; (3) intent to defraud; (4) justifiable reliance; and
(5) resulting damage); Corestates Bank v. Cutillo, 723 A.2d 1053,1058
(Pa. Sup. Ct. 1999) ((1) a false representation; (2) made in reference to a
material fact; (3) with knowledge of its falsity; (4) with the intent to
deceive; (5) an action that is taken in reliance on the representation; and (6)
Aprovable damages@
resulted from the fraud); Essex Ins. Co., Inc. v. Universal Entertainment
& Skating Center, Inc., 665 So. 2d 360, 362 (Fla. Dist. Ct. App. 1995)
((1) a false representation of fact; (2) known by the party making it to be
false at the time it was made; (3) that the representation was made for the
purpose of inducing another to act in reliance on it; (4) actual reliance on
the representation; and (5) resulting damage); Neptuno Treuhand-Und
Verwaltungsgesellschaft MBH v. Arbor, 692 N.E.2d 812, 815 (Ill. App. Ct.
1998) ((1) a false statement of material fact; (2) knowledge or belief of the
falsity by the party making it; (3) an intention to induce the other party to
act; (4) action by the other party in justifiable reliance on the truth of the
statement; and (5) damage to the other party resulting from such reliance); Lama
Holding Co., Inc. v. Smith Barney, Inc., 668 N.E.2d 1370, 1373 (N.Y. 1996)
((1) misrepresentation or a material omission; (2) falsity; (3) scienter; (4)
justifiable reliance; and (5) injury); Gibbs v. Ernst, 647 A.2d 882, 889
(Pa. 1994) ((1) a representation; (2) which is material to the transaction at
hand; (3) made falsely, with knowledge of its falsity or recklessness as to
whether it is true or false; (4) with the intent of misleading another into
relying on it; (5) justifiable reliance on the misrepresentation; and (6) the
resulting injury was proximately caused by the reliance); Stiley v. Block,
925 P.2d 194, 204 (Wash. 1996) ((1) representation of an existing fact; (2)
materiality; (3) falsity; (4) the speaker=s
knowledge of its falsity; (5) intent of the speaker that it should be acted
upon by the plaintiff; (6) plaintiff=s
ignorance of its falsity; (7) plaintiff=s
reliance on the truth of the representation; (8) plaintiff=s
right to rely upon it; and (9) damages suffered by the plaintiff); see also
Restatement (Second) of Torts, ' 525
(1981) (AOne who
fraudulently makes a misrepresentation of fact, opinion, intention or law for
the purpose of inducing another to act or to refrain from action in reliance
upon it, is subject to liability to the other in deceit for pecuniary loss
caused to him by his justifiable reliance upon the misrepresentation.@).  





[16]
Similarly, Snyder did not oppose certification in the trial court on the
grounds that the reliance element of common-law fraud defeated
commonality.  See Schein, 2002
WL 31426407, at *14. 
Even so, we note that reliance based on written representations, as
here, as opposed to oral representations, does not defeat predominance. Shroder
v. Suburban Coastal Corp, 729 F.2d 1371, 1378 (11th Cir. 1984) (finding
predominance where each class member received identical Truth-In-Lending
disclosure statements); see also Life Ins. Co. of the Southwest v. Brister,
772 S.W.2d 764, 774 (Tex. App.BFort
Worth 1986, no writ) (AConsumer class
actions involving numerous separate transactions may still be found to have
sufficient community of interest so long as class members are not required to
individually litigate numerous and substantial questions to determine each
member=s right to
recover subsequent to the ruling on the class action issues.@).      





[17]
Snyder does not in its brief argue or cite any authority that challenges the
trial court=s finding that
a class action is a superior method of fairly and efficiently adjudicating the
controversy.  Nor does Snyder raise on
appeal that the size of appellees=
claims preclude a finding that individual pursuit of the claims is economically
infeasible, as the supreme court found in Schein.  Schein, 2002 WL 31426407,
at *18 (individual damages limited to $74,000 by
stipulation).  





[18]
Although the trial court incorporated this statement into its findings of fact
in the certification order, the designation is not controlling, and we may
treat it as a conclusion of law.  See
Ray v. Farmers= State Bank,
576 S.W.2d 607, 608 (Tex. 1979)  (AAlthough
this finding appears among the conclusions of law, the designation is not
controlling and we may treat it as a finding of fact.@)






[19]
Because counsel=s
representations regarding litigation experience support the trial court=s
adequacy-of-representation finding, we do not address whether we may consider
the attorney resumes included in an appendix to appellees=
brief.  





[20]
Snyder complains throughout its briefing that the certification hearing was too
brief and that the trial court signed unchanged a proposed certification order
submitted by appellees.  Snyder does not
cite any authority or make any argument that either the brevity of a hearing or
a trial court=s adoption of a
party=s proposed
order is error.  Snyder has waived any
complaint in that regard.  Tex. R. App. P. 38.1(h); Fredonia
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Columbia
Rio Grande Regional Hosp. v. Stover; 17 S.W.3d 387, 392 (Tex. App.BCorpus
Christi 2000, no pet.).